Laramore, Judge,
delivered the opinion of the court:
This is a congressional reference case involving a claim for back pay. In a prior suit based on this claim, McCormick v. United States, 124 Ct. Cl. 111, the court held that a portion of the claim was barred by the statute of limitations, 28 U.S.C. 2501, and subsequently the parties entered into a stipulated settlement by the terms of which the plaintiff waived “any and all other claims upon defendant touching any and all matters involved in this case.”
House Resolution 280, under which this action is brought, requests the court to furnish to the House a report giving:
* * * such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.
The facts relative to this action are fully found and will be referred to only to the extent necessary.
The first question we are asked to report on is whether or not plaintiff has a legal claim against the United States.
As we held in the case of O'Hare v. United States, this day decided, ante, p. 55, any legal claim of plaintiff is barred by the waiver included in the stipulated settlement of the earlier case.[1]
Furthermore, plaintiff’s rights under section 8 of the Selective Training and Service Act of 1940, 54 Stat. 885, 890, as amended, 58 Stat. 798, have not been violated. As shown by the facts, plaintiff was restored to a position of like seniority, status and pay as the position which he held prior to entry into the service.
Plaintiff returned to the Railroad Retirement Board from military service on February 25,1946. He was re-employed *66 as an Unemployment Claims Examiner, CAF-7, which, position had equal seniority, status and pay as that which he held prior to his military service. At the time of plaintiff’s entry into service[1], he held the position of Employment Officer, CAF-7. Prior to that time plaintiff held the position of Eegional Certifying Officer, CAF-8, but was actually performing the wort of an employment officer at grade 7. Consequently, plaintiff’s position was reclassified to reflect the true nature of his duties. Accordingly, plaintiff agreed to accept the position of Employment Officer, grade 7, at no reduction in salary, and the position of Eegional Certifying Officer, CAF-8, formerly held by plaintiff, was abolished on June 1,1943. While plaintiff was in the military service his position of Employment Officer, CAF-7, was abolished and plaintiff was reassigned to a position of Unemployment Claims Examiner, CAF-7. This position had equal seniority, status and pay as that which plaintiff held when he entered the military service.
Since section 8 of the Selective Training and Service Act of 1940, supra, was designed only to give the returning serviceman an equal but not a better position, and since plaintiff returned to a position equal to that held prior to his military service, there were no violations of the Selective Training and Service Act, supra. See O'Hare v. United States, supra, this day decided. Consequently, plaintiff has no legal claim against the United States based upon a violation of section 8.
Plaintiff has alleged no specific violations of either section 12 or section 14 of the Veterans’ Preference Act of 1944, 58 Stat. 387, 390, and from the record we can find none. As a result, plaintiff has failed to prove and has no legal claim against the United States based upon the Veterans’ Preference Act, supra.
There remains the question of plaintiff’s equitable rights, if any. Inasmuch as plaintiff was restored to a position of equal seniority, status and pay to that enjoyed by him prior to his military service, he has lost nothing and as a result thereof does not have an equitable claim against the United States. See O'Hare v. United States, supra, this day decided.
This opinion and findings of fact, together with the con- *67 elusions thereon, will be certified by the clerk to Congress pursuant to House Eesolution 280, 84th Congress, 1st session.
It is so ordered.
Durfee, Judge; Madden, Judge; and Jones, Chief Judge, concur.
Whitaker, Judge, took no part in the consideration and decision of this case.
FINDINGS OF FACT
The court, having considered the evidence, the report of Trial Commissioner Paul H. McMurray, and the briefs and argument of counsel, makes findings of fact as follows:
1. This is the second time plaintiff’s claim for additional salary as a Federal employee has been considered by the Court. (See finding 15 herein.) No trial was held in connection with the first claim, the Court’s action being based on defendant’s motion to dismiss. Subsequently a formal trial was held with opportunity for both parties to submit proof, which included both oral testimony and documentary evidence. Plaintiff began his employment with the Eailroad Eetirement Board in 1939 and was continuously employed by the Board in various positions until his entrance into military service in 1943.
2. By letter dated March 4, 1943, plaintiff informed Mr. Murphy, the Eegional Director of the Eailroad Eetirement Board Eegion 3, with headquarters in Cleveland, Ohio, of a change in his draft status, and thereafter kept Mr. Murphy advised of such status. At that time plaintiff held a position of Eegional Certifying Officer, CAF-8.
3. Mr. Murphy was informed by a directive to all Ee-gional Directors of the Eailroad Eetirement Board, dated April 20,1943, that there was a possibility of obtaining draft deferments for positions of grade four and above in the Employment Stabilization and Field Service. The directive stated that a number of persons occupying positions in unemployment insurance adjudication were and had been devoting substantially full time to such employment and field service work, but that, as long as such employees occupied positions in unemployment insurance adjudication, de *68 ferments could not be secured for them. The directive further stated that action should be taken to authorize positions in the employment stabilization budget where such employees belonged, and that, even though such persons were eligible for deferment on other grounds, such action should be taken to get their positions changed to employment stabilization service.
4. Plaintiff, as a Eegional Certifying Officer, CAF-8, was in a position in the unemployment insurance adjudication field, but was actually performing the work of an employment officer at grade seven. Mr. Murphy advised the Director of Employment and Claims that plaintiff had for many months been used almost exclusively in the field service assisting in the employment activities.
5,. Mr. Murphy communicated with plaintiff about the possibility of a field job in the employment service, and plaintiff agreed to accept such a position. Mr. Murphy wrote to his headquarters recommending that the position of Eegional Certifying Officer, CAF-8, be abolished, and that a position of Employment Officer, CAF-8, be established. However, headquarters informed Mr. Murphy that there were no positions of employment officer at the grade eight level, but only at the grade seven level. Because such reclassification would not involve any salary loss, and because of the possibility of securing an occupational military deferment, plaintiff agreed to accept the grade seven position, and the headquarters office was so informed.
6. The recommendation to abolish the position of Eegional Certifying Officer, CAF-8, and to establish the position of Employment Officer, CAF-7, was made to the Board by the Director of Employment and Claims on May 13, 1943. On May 18, 1943, plaintiff informed Mr. Murphy, the Eegional Director, that he had received notice from his draft board to report for induction on June 1, 1943, and Mr. Murphy wrote to the Director of Employment and Claims the next day saying, among other tilings, “Therefore, unless immediate and successful action is taken on his case, we may lose him to the Army within the next two weeks.”
7. The position of Eegional Certifying Officer, CAF-8, was abolished by the Board on June 1, 1943.
*69 8. Plaintiff was changed from Regional Certifying Officer, CAF-8, to Employment Officer, CAF-7, effective May 16, 1943. The Advice of Personnel Action, reflecting that action, was actually typed on August 18, 1943, but the action had been approved by the Railroad Retirement Board on July 14, 1943. During the years 1941 to 1943, it was common practice to initiate such action and send it to the Board for approval, but to permit the person to occupy the position from the proposed effective date. Because Board members were traveling from Chicago to Washington in connection with war work, their signatures were frequently delayed for considerable pei’iods of time.
9. Plaintiff entered upon active military duty June 15, 1943. Plaintiff continued to work at the Cleveland office between June 1 and about June 10, 1943. He was then carried on the payroll in an annual leave status with the Railroad Retirement Board until July 10, 1943.
10. At the time plaintiff was inducted into military service he held the position of Employment Officer, CAF-7, in the Cleveland District Office.
11. On or about June 1, 1943, a position of Regional Certifying Officer, CAF-9, was created by an error of the headquarters office, and that position existed for a few months, occupied by a Mr. Nokes, a nonveteran who never performed the duties of Regional Certifying Officer, but, instead, performed the duties of a Regional Adjudicator, CAF-10. The erroneous CAF-9 position was abolished by action of the Board effective at the close of business September 15, 1943, and a position of Regional Adjudicator, CAF-10, was established effective September 16,1943, and filled by Mr. Nokes. The position of Regional Certifying Officer, CAF-9, which had been created in error and abolished within a short time to correct the error, did not represent the upgrading of plaintiff’s former CAF-8 position, and the CAF-9 position was not later upgraded to a position of Regional Adjudicator, CAF-10 or CAF-12.
12. While plaintiff was in the military service, his position of Employment Officer, CAF-7, was abolished, when that type of work later decreased in volume, and he was reassigned to a position of Unemployment Claims Examiner, CAF-7.
*70 13. When, plaintiff returned to the Railroad Retirement Board from military service on February 25, 1946, lie was reemployed as an Unemployment Claims Examiner, CAF-7. That position had equal seniority, status, and pay as that which plaintiff held when he entered the military service.
14. The position of Regional Certifying Officer, CAF-8, which plaintiff had held prior to, hut not at the time of, his entrance into military service, was not upgraded to Regional Certifying Officer, CAF-10, while plaintiff was away in military service and, in fact, the Cleveland Regional Office has never had a position of certifying officer at the grade ten level.
15. In an opinion of this Court promulgated January 13, 1953 (McCormick v. United States, 124 Ct. Cl. 111), it was held that the claim of Frank T. McCormick, plaintiff herein, for loss of salary, was barred by the statute of limitations, except for the period from July 15, 1946, to February 25, 1947. Subsequent to that decision, plaintiff and the Government entered into a stipulation of settlement for the amount of $375. The stipulation of settlement provided that plaintiff:
* * * hereby waives and abandons any and all other claims upon defendant touching any and all matters involved in this case and agrees to accept said amount of $375.00 in full satisfaction thereof * * *
Pursuant to said stipulation, the Court, by order dated July 13, 1954, entered judgment in favor of plaintiff for that amount.
16. In the instant suit, initiated by plaintiff’s petition of July 13, 1956, filed subsequent to passage by the House of H.R. 280, referring the case to this Court, the parties and the basis of the cause of action are the same as they were in McCormick v. United States, 124 Ct. Cl. 111 (1953).
17. H.R. 5385, for the relief of Frank T. McCormick, reads in part as follows:
* * * That the Secretary of the Treasury be, and he is hereby, authorized and directed to pay, * * * the sum of $13,137.24 to Frank T. McCormick, of Cincinnati, Ohio. Such sum represents the difference in pay to which said Frank T. McCormick was entitled under the Selective Service Act of 1940 and the Veterans’ Prefer *71 ence Act of 1944, and the amount he was actually paid by the Railroad Retirement Board, and is the sum he would have received had he filed his petition with the United States Court of Claims prior to the running of the statute of limitations: * * *
18. H.R. 5885 was not enacted into law, but was referred to the Court of Claims by House Resolution 280, requesting a report giving:
* * * such findings of fact and conclusions thereon as shall be sufficient to inform the Congress of the nature and character of the demand, as a claim legal or equitable, against the United States, and the amount, if any, legally or equitably due from the United States to the claimant.

 The court in the prior decision did not pass upon the merits of the action but held that plaintiff's claim, if any, for pay prior to July 15, 1946 was barred by the statute of limitations. A stipulation and consent judgment was entered for the pay lost from July 15, 1946 to February 25, 1947. The stipulation of settlement provided that plaintiff “* * * hereby waives and abandons any and all other claims upon defendant touching any and all matters involved in this case and agrees to accept said amount of $375.00 in full satisfaction thereof * *